## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **HSP DIRECT, LLC** <br><br>             **Plaintiff,** <br><br> **v.** <br><br> **ANDREW PETER OLLIS** <br><br> **and** <br><br> **BELIEVE MEDIA, LLC** <br><br>             **Defendant.** | Civil No. <u>1:18cv1163</u>  (CMH/TCB) |

## COMPLAINT

Plaintiff HSP Direct, LLC ("Plaintiff" or "HSP Direct"), by counsel, sets forth the following as its Complaint against Andrew Peter Ollis ("Ollis") and Believe Media, LLC ("Believe Media") (collectively, "Defendants"):

### NATURE OF COMPLAINT

1.     This is an action for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et. seq.,* violations of the Virginia Uniform Trade Secrets Act, Va. Code § 59.1-336, *et seq.*, breach of contract, breach of fiduciary duty, and conversion.

2.     Ollis is a former employee of HSP Direct. Upon information and belief, Ollis is the founder and sole member of Believe Media.

3.      Upon information and belief, Ollis and Believe Media are using HSP Direct's trade secrets in violation of the Defend Trade Secrets Act and the Virginia Uniform Trade Secrets Act.

4.      As an employee of HSP Direct, Ollis agreed to abide by the terms of HSP Direct's Employee Handbook, the terms of which required, among other things, Ollis to maintain the confidentiality of HSP Direct's confidential and proprietary information and to return all documents and information proprietary to HSP Direct upon termination of his employment.

5.      Upon termination of his employment, Ollis and HSP Direct entered into a Separation Agreement whereby Ollis agreed, among other things, to turn over all files, records and documents and all other property that Ollis received from HSP Direct and/or that he used in the course of his employment with HSP Direct and that are the property of HSP Direct. Ollis further agreed that he would not disclose trade secrets and other confidential information of HSP Direct or take any action that may cause such information to lose its character as trade secret or confidential information.

6.      Ollis breached the Separation Agreement by retaining possession of files, records and/or documents that are the property of HSP Direct and by disclosing, using and/or misappropriating trade secret and other confidential and proprietary information of HSP Direct.

7.      Ollis also breached his fiduciary duties to HSP Direct by misappropriating its confidential and trade secret information.

8.      Ollis further converted HSP Direct's proprietary information by wrongfully taking and exercising control over such information without HSP Direct's consent and without lawful justification.

## PARTIES

9.      HSP Direct is a Virginia limited liability company and a direct mail fundraising agency with its principal place of business at 20130 Lakeview Center Plaza, #300, Ashburn, Virginia 20147.

10.     Ollis is a former employee of HSP Direct who worked as an Account Executive. Upon information and belief, Ollis resides in and continues to work in Fairfax, Virginia.

11.     Believe Media is a Delaware limited liability company with its principal office at 300 Delaware Avenue, Suite 210-A, Wilmington, Delaware. However, upon information and belief, this address is a "virtual address" and Believe Media actually conducts its activities, including the alleged unlawful activities described herein, primarily in Fairfax, Virginia. Believe Media is an email list marketing agency attempting to compete with HSP Direct.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over claims in this action pursuant to 28 U.S.C. § 1331 because the claims stated herein arise under the laws of the United States. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are substantially related to Plaintiff's federal claims.

13.     This Court has personal jurisdiction over Defendants and venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district, conduct business in this district, have misappropriated trade secrets and confidential information in this district, and/or have harmed and caused injury to Plaintiff in this district.

## FACTUAL ALLEGATIONS

### HSP Direct's Business, Trade Secrets and Confidential Information

14.     HSP Direct is an award-winning full-service direct mail fundraising agency, offering online fundraising, direct mail fundraising, fundraising appeal production services, graphic design, and, through its affiliates, list brokerage and list marketing services. HSP Direct develops custom direct mail fundraising appeals for conservative organizations and electoral candidates and helps those clients reach their target donor bases and supporters.

15.     NOVA List Company, LLC ("NOVA") is a wholly owned subsidiary of HSP Direct, LLC. NOVA provides list brokerage and list marketing services for campaigns and political action committees, non-profits and charities, senior and pro-family groups, and military and law enforcement groups. NOVA manages more than 100 million individuals' names, and postal and email addresses in various donor and subscriber lists. The individuals are persons who contributed to conservative causes or political campaigns and persons who have subscribed to receive correspondence from various conservative publications and websites. NOVA brokers the data to customers and purchases, on behalf of its customers, additional lists of potential donors.

16.     HSP Direct's employees have developed and cultivated confidential and proprietary lists of five million individual donors' and subscribers' names and contact information, including email and physical addresses, telephone numbers, age, donation dates, donation amounts, and types of fundraising messages to which the individual responded (collectively, "HSP Direct Lists").

17.     The HSP Direct Lists are carefully crafted to ensure the highest levels of efficiency and cost effectiveness in reaching target donors and supporters. They are curated based on donor or subscriber political ideology, geography, donation amount, number of

donations made, individual net worth, and level of education. They are also curated based on a donor's or subscriber's responsiveness to surveys, petitions, newsletters, and subscriptions, and to which political campaign or charitable or political cause the donor or subscriber has responded.

18.     The HSP Direct Lists generate revenue for HSP Direct in interstate commerce through both internal use by HSP Direct and external sales. HSP Direct uses the HSP Direct Lists in connection with providing direct mail and online fundraising services to its clients. Additionally, for a fee, NOVA leases use of the HSP Direct Lists to its customers for use in their own fundraising appeals.

19.     The HSP Direct Lists as well as the strategies, techniques and criteria for developing such lists are confidential data assets and trade secrets and are highly valuable to HSP Direct in the conduct of its business and could be used by competitors to the disadvantage of HSP Direct.

20.     The HSP Direct Lists as well as the strategies, techniques and criteria for developing such lists are not generally known to others outside of HSP Direct, give HSP Direct an economic advantage over its competitors, and have been the subject of reasonable efforts by HSP Direct to maintain confidentiality.

**Ollis's Employment with HSP Direct**

21.     On or around December 9, 2013, Ollis became an employee of HSP Direct as an Account Executive.

22.     As an Account Executive for HSP, Ollis was responsible for promoting internal and external sales of services to distribute HSP Direct Lists and developing revenue through leasing HSP Direct Lists to NOVA customers. As an Account Executive, Ollis had knowledge of

strategies, techniques and/or criteria for developing the HSP Direct Lists. Such strategies, techniques and/or criteria are what make use of an HSP Direct List valuable to a particular customer and its campaign or cause.

23.    Each time Ollis completed a transaction with a NOVA customer to lease use of an HSP Direct List for the customer's fundraising and marketing use, NOVA engaged Sunrise Data Services, LLC ("Sunrise"), an affiliate of HSP Direct and NOVA that provides data storage and management solutions for NOVA and other clients, to package and deliver the HSP Direct List data to the customer. Sunrise delivered HSP Direct Lists as attachments via email. When Sunrise delivered lists to NOVA customers whose accounts Ollis managed, Sunrise copied Ollis on the email message.

24.    Accordingly, whenever Sunrise sent an HSP Direct List to a NOVA customer whose account Ollis managed, Ollis's HSP Direct employee email address was copied on the message and Ollis had access to the HSP Direct List and the data contained therein.

25.    Upon information and belief, Ollis was at all times aware that the HSP Direct Lists as well as the strategies, techniques and criteria for developing such lists are confidential and highly valuable property of HSP Direct.

26.    On or around June 16, 2015, Ollis signed a Statement of Handbook Receipt and Understanding, agreeing to abide by the contents of HSP Direct's Employee Handbook ("Employee Handbook").

27.    Part IV(E) of the Employee Handbook acknowledges that employees may, in the course of their employment, be exposed to personal or confidential information about HSP Direct's operations or others with whom HSP Direct does business, which includes proprietary and confidential curated lists of donors and subscribers and the personal information contained

therein. Part IV(E) requires employees to ensure that such confidential information remains confidential and is not disclosed, including when employment ends.

28. Part IV(E) of the Employee Handbook states:

> If your employment with [HSP Direct] terminates, for any reason, you must promptly return to HSP [Direct] all confidential documents and other materials that you have.

Employees "are not permitted to retain copies of any such documents or materials."

29. On or around November 9, 2016, HSP Direct terminated Ollis's employment when it came to the attention of HSP Direct that Ollis started his own business, Believe Media, and began competing with HSP Direct while still employed by HSP Direct.

30. On or around November 17, 2016, Ollis executed a Separation Agreement with HSP Direct ("Agreement").

31. In Paragraph 6 of the Agreement, Ollis agreed to

> turn over to [HSP Direct] . . . all files, memoranda, records . . . and any other . . . documents, and all other physical or personal property that [Ollis] received from [HSP Direct] and/or that [Ollis] used in the course of [Ollis]'s employment with [HSP Direct] and that are the property of [HSP Direct] or its customers.

32. In Paragraph 7 of the Agreement, Ollis agreed

> to protect and hold in confidence all Trade Secrets and Confidential Information [as those terms are defined in the Agreement] ('Company Information') belonging to [HSP Direct] that [Ollis] has received through or as a result of [Ollis]'s employment by [HSP Direct] and to take no action that may cause any such information to lose its character as Company Information.

Ollis further agreed to "neither disclose, divulge nor communicate to any third part any Trade Secrets belonging to [HSP Direct]."

**Ollis's and Believe Media's Misappropriation of Trade Secrets**

33.     In or around early December 2017, Ollis sent an email to Mark Clark ("Clark"), then-president of NOVA, inviting him to meet. Clark agreed that he would meet with Ollis to catch up with him after January 1, 2018.

34.     On or around February 8, 2018, Clark and Ollis met privately for drinks. During their discussion, Ollis stated he had created very large lists of individual donors and subscribers and that a list he called "Rebel Wire" was his best list. Ollis claimed he owned the Rebel Wire list and that it contained the names and contact information for 470,000 individuals. Based on his industry experience and knowledge of how large lists of donors and subscribers are generated, Clark expressed surprise at the size of the Rebel Wire list. Ollis claimed he developed the list himself but, upon information and belief, Believe Media has very limited clients and tools to generate a list that size.

35.     The next morning, on or around February 9, 2018, Ollis telephoned Clark. During their discussion, Ollis stated to Clark that, while employed by HSP Direct, Ollis synced his HSP Direct employee email address to the Mail mobile application on his personal iPhone smartphone, which automatically backed up all email messages received in the application to Ollis' Apple iCloud remote data storage drive. Ollis told Clark that, when Sunrise copied Ollis on email correspondence, Ollis received the email messages through his personal smartphone and all such messages, including all HSP Direct List files attached thereto, were backed-up and retained in Ollis's private Apple iCloud remote data storage drive. Ollis told Clark that this had been happening since the time his employment began in December 2013 and until the time his employment ended in November 2016.

36.     Upon information and belief, throughout the entire time of his employment by HSP Direct, Ollis *did* sync his HSP Direct employee email address to his smartphone mail application and this application *did* receive and automatically backup all email messages received by Ollis's HSP Direct employee email address, including all HSP Direct Lists attached thereto, to Ollis's private Apple iCloud remote data storage drive.

37.     Ollis further told Clark that Ollis spoke to an attorney about the fact that he retained his HSP Direct employee email account messages and the attached HSP Direct Lists in his iCloud remote data storage drive and that this attorney advised Ollis that he had a "legal right of use" with respect to the lists.

38.     No such "legal right of use" exists and Ollis has no license, permission or other right to retain or use any HSP Direct Lists.

39.     Notwithstanding, Ollis *did* retain email messages received to his HSP Direct email address, including HSP Direct Lists attached thereto.

40.     Upon information and belief, between the time his employment ended in November 2016 until at least February 2018, Ollis delivered HSP Direct Lists to Believe Media.

41.     Believe Media's February 2018 "email media rate card," or list of data assets controlled by Believe Media and available for its customers' direct marketing use, included donor and subscriber lists titled "2016 Candidate Donors," "TheRebelWire.com," and "ConservativeFWD" (collectively, the "Believe Media Lists") as well as the number of individual donors or subscribers included in and a description of the Believe Media Lists.

42.     Upon information and belief, the Believe Media Lists are HSP Direct Lists or were derived from or created by using the HSP Direct Lists unlawfully retained by Ollis after his employment ended as well as the strategies, techniques and criteria for developing such lists.

43.     Upon information and belief, Ollis and Believe Media are actively marketing, selling and leasing, distributing, and otherwise using the HSP Direct Lists in the course of their business and to compete with HSP Direct.

44.     Upon information and belief, Ollis and Believe Media are using or have used HSP Direct Lists and the data contained therein as well as the strategies, techniques and criteria for developing such lists to create additional donor and subscriber lists, which Ollis and Believe Media are actively marketing, selling and leasing, distributing, and otherwise using in the course of their business and to compete with HSP Direct.

45.     HSP Direct has never authorized or consented to Ollis's possession, use or distribution of the HSP Direct Lists or any of the strategies, techniques and criteria for developing such lists after termination of his employment by HSP Direct.

46.     HSP Direct has never authorized or consented to Believe Media's possession, use or distribution of the HSP Direct Lists or any of the strategies, techniques and criteria for developing such lists.

47.     As a result of the conduct of Ollis and Believe Media, HSP Direct has been caused to suffer substantial injury and is continuing to suffer irreparable harm for which it has no adequate remedy at law.

48.     Ollis and Believe Media have at all times acted with malice and with conscious and willful disregard for the rights of HSP Direct.

**COUNT I**
**VIOLATIONS OF THE DEFEND TRADE SECRETS ACT**
**<u>BY OLLIS AND BELIEVE MEDIA</u>**

49.     HSP Direct incorporates by reference the allegations in paragraphs 1 through 48 of the Complaint as though fully set forth herein.

50.    The Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831, *et seq.*, creates a private right of action for "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

51.    Defendants have willfully and maliciously, through improper means, misappropriated the trade secrets of HSP Direct, including, but not limited to, proprietary lists of donor names and contact information and other data, including the HSP Direct Lists, as well as information pertaining strategies, techniques and criteria for developing such lists, in violation of the DTSA. Further, Ollis and Believe Media have disclosed and used the trade secrets without the express or implied consent of HSP Direct and with the knowledge that such trade secrets were acquired under circumstances giving rise to a duty on the part of Defendants to maintain the secrecy thereof.

52.    HSP Direct uses these trade secrets in interstate commerce, HSP Direct took reasonable steps to maintain the secrecy of these trade secrets, including, without limitation, distributing and requiring employees to agree to abide by the Employee Handbook, requiring all employees to maintain the confidentiality of proprietary information.

53.    These trade secrets were not generally known or readily ascertainable by other persons who could obtain economic value from their disclosure or use.

54.    HSP Direct is the owner of these trade secrets and has the rightful title to the trade secrets, having developed and protected them.

55.    Upon information and belief, Defendants will continue to use the trade secrets that they misappropriated from HSP Direct to promote Believe Media's business.

56.     As a result of the acts and threatened acts of misappropriation or misuse by Ollis and Believe Media, HSP Direct has suffered, and will continue to suffer, irreparable harm and damages.

57.     Disclosure or use of HSP Direct's trade secrets will result in immediate and irreparable harm to HSP Direct for which there is no adequate remedy at law.

## COUNT II
## VIOLATIONS OF THE VIRGINIA UNIFORM TRADE SECRETS ACT
## BY OLLIS AND BELIEVE MEDIA

58.     HSP Direct incorporates by reference the allegations in paragraphs 1 through 57 of the Complaint as though fully set forth herein.

59.     Ollis and Believe Media, willfully and maliciously, through improper means, have misappropriated and/or are using confidential and proprietary information of HSP Direct that constitutes trade secrets under the Virginia Uniform Trade Secrets Act ("VAUTSA"), Va. Code § 59.1-336, *et seq.*, including, but not limited to, proprietary lists of donor names and contact information and other data, including the HSP Direct Lists, as well as information pertaining to strategies, techniques and criteria for developing such lists.

60.     These trade secrets have independent economic value, actual and potential, are not generally known to and are not readily ascertainable by proper means by other persons who can obtain or derive economic value from the disclosure or use of such trade secrets. HSP Direct has also undertaken reasonable efforts to maintain the secrecy and confidentiality of such trade secrets.

61.     Further, Ollis and Believe Media have disclosed and used the trade secrets without the express or implied consent of HSP Direct and with the knowledge that such trade

secrets were acquired under circumstances giving rise to a duty on the part of Defendants to maintain the secrecy thereof.

62.     The Defendants have been unjustly enriched by the misappropriation and use of the trade secrets of HSP Direct.

63.     As a result of the acts and threatened acts of misappropriation or misuse by Ollis and Believe Media, HSP Direct has suffered, and will continue to suffer, irreparable harm and damages.

64.     Disclosure or use of HSP Direct's trade secrets will result in immediate and irreparable harm to HSP Direct for which there is no adequate remedy at law.

## COUNT III
## BREACH OF CONTRACT
## BY OLLIS

65.     HSP Direct incorporates by reference the allegations in paragraphs 1 through 64 of the Complaint as though fully set forth herein.

66.     Ollis executed a valid and enforceable Severance Agreement, which contained express provisions (i) requiring Ollis to return to HSP Direct all files, records and any other documents and property that Ollis received from HSP Direct and/or that Ollis used in the course of his employment with HSP Direct that are HSP Direct's property; (ii) prohibiting Ollis from disclosing HSP Direct's confidential information; and (iii) prohibiting Ollis from taking any action that may cause any of HSP Direct's trade secrets or other confidential information to lose their character as trade secret or confidential information.

67.     Ollis has breached the Severance Agreement by, among other things, failing to return HSP Direct Lists and by misappropriating, using or disclosing HSP Direct's trade secrets and other confidential information.

- 13 -

68.     The Severance Agreement provides that in the event of breach or contemplated breach, HSP Direct shall be entitled to a temporary and permanent injunction.

69.     HSP Direct has suffered, and will continue to suffer, irreparable harm and damages as a result of Ollis's breach of the Severance Agreement.

## COUNT IV
## BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY
## BY OLLIS

70.     HSP Direct incorporates by reference the allegations in paragraphs 1 through 69 of the Complaint as though fully set forth herein.

71.     As an employee of HSP Direct, Ollis owed HSP Direct a fiduciary duty of good faith and duty of loyalty.

72.     While still employed by HSP Direct, Ollis breached his fiduciary duty of good faith and duty of loyalty by, among other things, misappropriating HSP Direct's confidential and proprietary information for his own use.

73.     As a result of Ollis's breach of duty, HSP Direct has suffered, and will continue to suffer, irreparable harm and damages.

## COUNT V
## CONVERSION
## BY OLLIS

74.     HSP Direct incorporates by reference the allegations in paragraphs 1 through 73 of the Complaint as though fully set forth herein.

75.     HSP Direct invested substantial amounts of time and expense in creating, developing and cultivating the HSP Direct Lists. The HSP Direct Lists are highly valuable data assets belonging to HSP Direct.

76.     Ollis knowingly, willfully, deliberately, and without justification stole and converted and appropriated as his sole property the HSP Direct Lists.

77.     Ollis's actions with respect to the HSP Direct Lists are inconsistent with HSP Direct's ownership of the lists.

78.     As a result of Ollis's conversion of the HSP Direct Lists, HSP Direct was damaged.

## PRAYER FOR RELIEF

WHEREFORE, HSP Direct respectfully requests that this Court enter judgment in favor of Plaintiffs and against Defendants and enter an order granting the following relief:

1.     Awarding HSP Direct compensatory damages in an amount to be determined at trial, but not less than $100,000.00; and

2.     Awarding HSP Direct double damages under Va. Code §59.1-338 plus attorney's fees under Va. Code §59.1-338.1; and

3.     Awarding HSP Direct punitive damages in the amount of $100,000.00 against Ollis in connection with Count IV; and

4.     Awarding a temporary and permanent injunction prohibiting Ollis from violating paragraphs 6 and 7 of the Severance Agreement and prohibiting Ollis and Believe Media, and anyone working in concert with them, from disclosing, conveying or using for their own benefit or the benefit of any other person or entity or otherwise making available to any other person or entity, any trade secrets or confidential information belonging to HSP Direct and from otherwise violating the DTSA and/or the VAUTSA; and

5.     Awarding HSP Direct such other relief as this Court deems appropriate.

TRIAL BY JURY IS DEMANDED.                    HSP DIRECT, LLC


Dated:          September 12, 2018          By: /s/ Christopher J. Forstner
                                            Christopher J. Forstner, VA Bar No. 45375
                                            Julia M. Bishop, VA Bar No. 80137
                                            TROUTMAN SANDERS LLP
                                            1001 Haxall Point
                                            Richmond, Virginia 23219
                                            Telephone:  804.697.1874
                                            Facsimile:   804.697.1339
                                            Chris.Forstner@troutman.com
                                            Julia.Bishop@troutman.com

                                            Attorneys for Plaintiff, HSP Direct LLC

- 16 -